IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

JAMES F. THOMSON D/B/A
AMERICAN SOUTHWEST ELECTRIC,

Plaintiff,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS, OMAHA DISTRICT,

Defendant.

CIVIL ACTION NO. 18-1982 C

COMPLAINT, REQUEST FOR
DECLARATORY JUDGMENT
AWARDING THE CONTRACT TO
PLAINTIFF AND PRELIMINARY
INJUNCTION

Plaintiff, James F. Thomson d/b/a American Southwest Electric ("ASE" or "Plaintiff"), through the undersigned counsel, alleges as follows:

## I.   **INTRODUCTION**

1.     Plaintiff, the low bidder for Solicitation No. W9128F-18-B-0006 for the Fish Bypass Channel and Replacement Weir, Lower Yellowstone River Intake project ("Project")[1], has improperly been denied award of the Contract for the Project and is filing this Complaint to overturn this improper procurement result.

2.     The Contracting Officer ("CO") for the United States Army Corps of Engineers, Omaha District ("ACOE") improperly divested Plaintiff of the contract award notwithstanding that Plaintiff, a small business interest, was deemed competent by the Small Business Administration ("SBA").  Due to the acts or omissions of the ACOE, SBA was directed to not issue a Certificate of Competency Determination ("COC"), which would have automatically entitled Plaintiff to the contract award as the low bidder.

_____

[1] Pursuant to 48 C.F.R. 19.602–1, upon determining and documenting that an apparent successful small business offeror lacks certain elements of responsibility, the ACOE is required to withhold contract award and refer the matter to the SBA for a COC determination. The SBA's determination of competency is conclusive and binding. 13 C.F.R. § 125.5(a)(2)(ii).



3.      In addition to violating the FAR, regulations governing bid protests and the SBA guidelines, the ACOE's actions removed Plaintiff's opportunity to participate in and benefit from fair competition in the bidding process and will dissuade other small business entities from bidding on government projects of this scale in the future. This action is perhaps best summarized by the SBA itself, who determined that "the USACE-Omaha District made an **arbitrary and capricious decision to unfairly eliminate**" Plaintiff from the contract award.[2]

4.      Unlike typical bid protests that involve disputes over timeliness of acts of the bidder, Plaintiff timely provided all required documentation and information to the SBA, to enable SBA to make its competency determination. There was nothing more that Plaintiff could have done to supplement its application in support of Plaintiff's competency. The documentation that Plaintiff timely submitted to the SBA was determined sufficient by SBA to issue a COC on Plaintiff's behalf.[3]

5.      The subject matter of this protest pertains to the SBA's purported failure to meet its deadline to issue a COC and the ACOE's actions that caused SBA to not meet the ACOE imposed deadline for issuance of the COC.  It is undisputed that Plaintiff could not have done anything more in support of its bid for the Project.

6.      Through this Complaint, Plaintiff seeks the right, as a small business interest, to be afforded the due process contemplated by Congress when it enacted the Small Business Act, 15 USC 630, et seq., for the express purpose of enabling small business interests to compete for large government contracts, which they have historically been precluded from securing. 15 U.S.C. 637(a)(1)(A) and (B) (2000).

---

[2] *See* September 27, 2018 Email between the SBA and ACOE at **Exhibit A (emphasis added)**.
[3] **Exhibit A** ("SBA has rendered a decision for this particular COC referral today and is prepared to issue a COC on behalf of James F. Thomson, Jr. d/b/a American Southwest Electric").



COMPLAINT – 2
175720.4 | 102264.1

7.     Plaintiff is the undisputed low bidder for the Project and was determined to be competent by the SBA. These two factors alone are sufficient to warrant awarding the contract for the Project to Plaintiff.  However, Plaintiff was not awarded the contract because of the ACOE's acts or omissions that prevented Plaintiff from award of the contract.

8.     The acts or omissions of ACOE have resulted in Plaintiff, a small business interest, not being awarded a $35,000,000 contract for the federal government, despite being the low bidder, contrary to the policy behind the Small Business Act and SBA's exclusive authority to override an Agency's Determination of Non-Responsibility ("DNR").[4]

9.     Without the intervention of this Court, Plaintiff will have no opportunity to have this procurement violation corrected and the policy of the SBA "whose function was to 'aid, counsel, assist and protect, insofar as is possible, the interests of small business concerns'"[5] as well as ensure small businesses a "fair proportion" of government contracts will be undermined.

## II.     NATURE OF THE ACTION

10.     Plaintiff seeks declaratory judgment and permanent injunctive relief against the ACOE, to: (1) enjoin Ames Construction, Inc. ("Ames") from performance on the contract pursuant to the Award of September 30, 2018; (2) enjoin any entity other than Plaintiff from performance of the contract; (3) vacate the award of the contract to Ames; and (3) award the contract to Plaintiff.

---

[4] The GAO has commented that government agencies "lack the internal controls required to provide reasonable assurance that only eligible small businesses participate" and the SBA plays an important role in this process. https://www.gao.gov/key_issues/economic_development_and_small_business/issue_summary.
[5] https://www.sba.gov/about-sba/what-we-do/history.



COMPLAINT – 3
175720.4 | 102264.1

11.     Plaintiff is ready and able to begin performance of the contract if its request for relief is granted.

12.     This complaint seeks to rectify the violation of the FARs, regulations governing bid protests, SBA guidelines and the injustice of permitting the ACOE to undermine the SBA competency process.

### III.     PARTIES

13.     Plaintiff is a business entity registered in Nevada, with its principal place of business at 4485 Riviera Ridge Avenue, Las Vegas, Nevada 89115. Plaintiff is a fully licensed electrical, civil and maintenance contractor for government and commercial customers.

14.     The Defendant is the United States acting through the Army Corps of Engineers.

### IV.     JURISDICTION AND STANDING

15.     This Court has jurisdiction over this bid protest pursuant to 28 U.S.C. § 1491(b)(1) (2006), which states that this Court "shall have jurisdiction to render judgment on an action by an interested party…to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement."

16.     Plaintiff has standing as an "interested party" to file this bid protest. 28 U.S.C. § 1491(b)(2). In the context of a challenge to an improperly awarded contract, a plaintiff "need only establish that it 'could compete for the contract' if the bid process were made competitive." *Def. Tech., Inc. v. United States*, 99 Fed. Cl. 103, 115 (2011) (citation and quotation omitted). "Being wrongfully deprived of the opportunity to fully and fairly compete suffices to establish prejudice on the merits." *Distributed Solutions, Inc. v. United States*, 104 Fed. Cl. 368, 380 (2012).

COMPLAINT – 4
175720.4 | 102264.1



Ahlers Cressman & Sleight PLLC
999 THIRD AVE. SUITE 3800 SEATTLE, WA 98104-4023

17.     Here, not only is it clear that Plaintiff could compete for the Project, but Plaintiff was the lowest responsible bidder and should have been awarded the contract.

18.     There is no dispute that Plaintiff is the lowest bidder on the Project.

19.     There is also no dispute that Plaintiff timely provided all relevant information and documentation to the SBA and that the SBA would have issued a COC on Plaintiff's behalf, but for the ACOE informing the SBA "I will not accept a COC at this time."[6]

20.     ACOE did not object to the date on which SBA stated it would issue the COC and did not inform SBA of any earlier procurement deadlines that would make the date SBA stated it would issue the COC problematic. In total, the ACOE's actions invited a submission by the SBA on September 27, 2018, without caveat.

21.     But for the ACOE's improper actions set forth in this Complaint, Plaintiff would have been awarded the contract.

22.     If not granted the relief requested in this Complaint, Plaintiff will suffer a permanent injury because it will be denied the opportunity to be awarded and perform an important $35,000,000 contract it earned the right to perform. Moreover, the public interest and trust will be harmed if the Court does not reverse the ACOE's prior decision.

## V.     BACKGROUND

**a)     Plaintiff is the Lowest Responsible Bidder**

23.     The ACOE solicited bids for construction of the Project.

24.     Based on raw numbers, Plaintiff was the second lowest bidder on the Project behind Ames.

---

[6] **Exhibit A.**



Ahlers
Cressman &
Sleight PLLC
999 THIRD AVE. SUITE 3800 SEATTLE, WA 98104-4023

25.    However, pursuant to Plaintiff's HUBZone certification, Plaintiff was entitled to a 10% preference, which reduced its bid sum and made Plaintiff the lowest responsible bidder on the Project.

26.    On August 23, 2018 Plaintiff made the Contracting Officer aware that the preference applied to Plaintiff's bid via email and it was referred to the ACOE for evaluation. The ACOE ultimately determined that Plaintiff was the lowest bidder.[7] The ACOE email also represented that time **was not of the essence** as the Contracting Officer indicated "it may take several weeks before I can give you a definitive response" with respect to application of the preference.  **Exhibit B.**

27.    The ACOE's Contracting Officer seemed determined to find Plaintiff not competent before even reviewing substantive information on Plaintiff's qualifications. On August 29, 2018 the Contracting Officer dismissively informed Plaintiff "[I]t's not apparent that the requirements of FAR Clause 52.219-4 'Notice of Price Evaluation Preference for HUBZone Small Business Concerns' will be met." **Exhibit B**.  The statement was made to Plaintiff before the Contracting Officer had even reviewed a single file related to Plaintiff's HUBZone qualification criteria. This demonstrates a bias against Plaintiff from the outset of the bidding process that continued from that day forward.

**b)    The Agency Issued a Determination of Non-Responsibility**

28.    On August 30, 2018 the Contracting Officer notified Plaintiff that he had determined that Plaintiff was non-responsible.[8]

29.    The Contracting Officer did not conduct a fair assessment of Plaintiff's responsibility. Other than a general review of the bond information provided to the

---

[7] *See* August 23, 2018 Email Between ASE and Contracting Officer at **Exhibit B**.
[8] *See* Determination of Non-Responsibility ("DNR") at **Exhibit C**.



1   ACOE, it is unclear what the Contracting Officer did to assess Plaintiff's competency at
2   all.

3       30.     Pursuant to FARs the Agency referred the DNR to the SBA regional
4   office.

5   **c)   <u>The Matter is Referred to the SBA</u>**

6       31.     The ACOE mailed a package of materials relevant to its DNR to the
7   building where the SBA regional office is located in Glendale, CA. That package arrived
8   at the common area front desk of the building (not the SBA office) in which the SBA
9   Office is located on September 4, 2018.

10      32.     The SBA regional office was unable to receive, conduct intake and
11  process the ACOE's referral until September 6, 2018.

12      33.     On September 6, 2018 the SBA sent correspondence to both the ACOE
13  and Plaintiff stating:

14
15      This is to confirm that the referral of subject bidder for a Certificate of Competency
        ("COC") is for Credit/Finance and Capacity only, and the other elements of responsibility
        will not be considered now or at a later date for this solicitation. Please be assured that
        SBA will review <u>all</u> of the issues outlined in the Determination and Findings of Non-
16      Responsibility document.

        In the event an application is received and our survey results in a finding that a COC will
17      be issued, we will advise you accordingly prior to our final action. We expect to notify you
        of our decision on or before September 27, 2018.

18      34.     The Agency believed that the COC deadline was September 27, 2018,
19  which is 15 working days from September 6, 2018. This is consistent with the SBA's
20  understanding that the receipt of the referral from the Agency was on September 6, 2018.

21      35.     The SBA requested that Plaintiff submit evidence in support of its
22  responsibility on or before September 14, 2018, which Plaintiff timely submitted to the
23  SBA.

24

25

COMPLAINT – 7
175720.4 | 102264.1



Ahlers
Cressman &
Sleight PLLC
999 THIRD AVE. SUITE 3800 SEATTLE. WA 98104-4023

36.     Plaintiff fulfilled all its obligations with regard to submitting documentation and there was nothing more that Plaintiff could do to support the COC determination.

**d)     Communications Between the SBA and the ACOE**

37.     Following the SBA's September 6, 2018 correspondence, the ACOE sent an email to Marina Laverdy at the SBA that same day. The ACOE inquired:[9]

> First, regarding the first paragraph statement "....COC is for Credit/Finance and Capacity only...", does this include the 15%/50% HUBZone performance matter? I was not sure how classify the HUBZone element of the responsibility determination, but I do not believe that credit, finance, or capacity covers it. It's most similar to limitation on subcontracting. A statement is made later that all issues in the determination will be reviewed.

> Second, regarding the NLT September 27th decision date, that is 16 working days from today. The package was delivered on September 4th. I realize it probably did not get processed immediately. Since this contract requires Congressional reporting, even 1 day makes a difference in my ability to make a fiscal year end award. Is it likely a response will be with 15 working day?

38.     Ms. Laverdy responded to the ACOE's inquiry by adamantly proclaiming that the SBA would only be able to issue the COC by the deadline of September 27, 2018.

39.     The ACOE was aware that Army regulations required the Contracting Officer to give notice to Congress of the award by 12 p.m. EST on September 27, 2018. The actual contract could be awarded later, however the notice of the award (and the decision on the award) had to be provided on or before that date or time.

40.     Thus, the Contracting Officer was aware at all times during his correspondence with the SBA of a hard deadline to make a decision on the contract.

41.     At no point during the communications between the ACOE and the SBA, did the ACOE inform the SBA of this known deadline.

---

[9] *See* September 6, 2018 Email Between the SBA and ACOE at **Exhibit D**.



42.     Following the September 6, 2018 correspondence, the ACOE remained silent and did not inquire into the status of SBA's issuance of the COC until it eventually and abruptly notified the SBA that it had missed its deadline to issue a COC.

43.     The SBA had a face to face meeting with the "Commander" at the ACOE in the days leading up to the September 27, 2018 deadline and the ACOE did not mention to the SBA that an earlier deadline was in place or inform the SBA that a deadline even existed.[10]

**e)       The ACOE Informed the SBA it No Longer Has Jurisdiction to Issue COC**

44.     On September 27, 2018 at 8:12 a.m., the ACOE issued a notice to the SBA that it no longer would be able to issue a COC and that the ACOE was going to award the contract to the next lowest bidder, Ames.[11]

45.     ACOE stated, "this contract is a high visibility and high priority project for USACE so I have to move ahead,"[12] which was in direct contradiction to the Agency's actions and its email of August 23, 2018 stating that time was not of the essence and the evaluation would take several weeks.

46.     Had the ACOE simply called the SBA at 8 a.m., instead of emailing, the SBA would have informed the ACOE that it was prepared to issue a COC at that time and could have issued a COC in advance of the ACOE's purported 12 p.m. deadline that day. Instead, the ACOE emailed the SBA that morning and then avoided the SBA's frantic return phone calls in response to the email.  ACOE's conduct demonstrated it sought to avoid an award of the contract to Plaintiff.

47.     The SBA objected to ACOE's conduct immediately and challenged the ACOE's conduct of taking no issue with the September 27 deadline to issue a COC and

---

[10] **Exhibit A**.
[11] *See* September 27, 2018 Notice from Agency as **Exhibit E**.
[12] **Exhibit A**.



then silently waiting for the SBA to fail to issue the COC on an earlier, unknown, deadline.

48.     Nicholas Manalisay, SBA Area Director, took issue with several other actions taken by the Agency as well. He stated:[13]

> While you state in your memo that you did not agree to an extended due date, you never explicitly informed SBA that September 27, 2018 would not be acceptable. Attached is the letter that our Area VI COC Specialist, Marina Laverdy, sent to you via email on September 6, 2018 explicitly stating that the due date was September 27, 2018. While you did question the due date in the letter in a subsequent email (attached for reference), our COC Specialist was explicitly clear in her response that SBA would provide a decision on this particular COC as soon as possible but guaranteed by September 27th. Until we received your email/memo today, SBA had not heard from you that the 27th was an unacceptable due date. In addition, Ms. Laverdy had a conversation with your Commander earlier this week who understood that SBA would have a decision on this COC referral by the 27th and did not indicate to her during their conversation that the 27th was unacceptable.

49.     He further documented ACOE's refusal to accept a COC that SBA was prepared to issue that day:

> As indicated in our correspondence with you (in our emails and letter), SBA has rendered a decision for this particular COC referral today and is prepared to issue a COC on behalf of James F. Thomson, Jr. dba American Southwest Electric. Ms. Laverdy has tried to contact you today to discuss our decision and your memo but to no avail. Therefore, I am writing this email to you.

50.     Mr. Manalisay warned the ACOE that its deceptive, arbitrary and capricious actions could have consequences for the Agency:

> It would certainly be in the firm's best interest to file a GAO protest on the basis that the USACE-Omaha District made an arbitrary and capricious decision to unfairly eliminate it from possible contract award. It would also be in the firm's interest to have their Congressional representatives make inquires as to why their constituent, a HUBZone firm with employees living in HUBZones, was eliminated from competition for a potential contract over a contracting officer's determination that 1 business day made a difference.
>
> Perhaps it's not too late to rethink your decision.

**f)      The Agency Divested the SBA from Its Ability to Issue a COC**

51.     The SBA was ready to issue a COC on Plaintiff's behalf on the morning of September 27, 2018 had the SBA been given the opportunity.

---

[13] **Exhibit A**.


Ahlers Cressman & Sleight PLLC
999 THIRD AVE. SUITE 3800 SEATTLE, WA 98104-4023

52.     However, the SBA was told by the ACOE that the contract had been awarded to the next lowest responsible bidder and the Agency would "not accept the COC at this time."[14]

53.     The ACOE's assertion that the contract was awarded was false. Further, the ACOE <u>ignored</u> the SBA's email discussion of the improper award and notice of bid protest from Plaintiff's counsel for **three days** before the actual award of the contract was provided to Ames on September 30, 2018.[15]   The ACOE's conduct following September 27, 2018 demonstrates that the ACOE had no intention of correcting its error, even though the ACOE had three days between the discovery of its mistake and the date that the contract was actually awarded to Ames.

54.     The Agency's actions divested SBA of jurisdiction to issue a COC and SBA stated that this is the only reason no COC was issued.

## VI.     COUNT I – DECLARATORY JUDGMENT THAT PLAINTIFF IS A COMPETENT BIDDER FOR THE PROJECT

55.     Plaintiff incorporates by reference paragraphs 1-54 of the Complaint as if fully set forth herein.

56.     The proper standard of review in a bid protest is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A); *Glenn Defense Marine (Asia) PTE, Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013) ("In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial"); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d

---

[14] **Exhibit A.**
[15] *See* Plaintiff's Counsel letter of September 29, 2018 at **Exhibit F**.



1324, 1332 (Fed. Cir. 2001); *see also Citizens to Preserve Overton Park*, *Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977).

57.     The Court of Federal Claims may grant the relief it considers proper, including declaratory and injunctive relief, where a protester succeeds in establishing prejudicial error. *California Indus. Facilities Res., Inc. v. United States*, 100 Fed. Cl. 404, 410 (2011) (citing 28 U.S.C. § 1491(b)(2); *Lumetra v. United States*, 84 Fed. Cl. 542, 549 (2008)).

58.     Moreover, a government contract award may be set aside as erroneous under the arbitrary and capricious standard if "(1) the procurement official's decision lacked a rational basis; or (2) ***the procurement procedure involved a violation of regulation or procedure***." *Weeks Marine, Inc. v. United States,* 575 F.3d 1352, 1358 (Fed.Cir.2009) (emphasis added); *Banknote Corp. of Am. v. United States (Banknote),* 365 F.3d 1345, 1351 (Fed.Cir.2004).

59.     Here, the Agency committed prejudicial error by divesting the SBA of its statutory and exclusive authority to evaluate the competency of a small business concern. The Agency's determination was arbitrary and capricious as it violated the procurement regulations and the common customs and practices between the SBA and Agencies in the referral process.

60.     The legislature enacted the Small Business Act, in part, for the express purpose of enabling small business interests to compete in large government contracts. 15 U.S.C. 637(a)(1)(A) and (B) (2000). The SBA serves an essential role in this process, as it is uniquely qualified to determine whether a small business concern is competent to



perform. 48 C.F.R. 9.104–3(e).[16] As such, the FAR, regulations governing bid protests and the SBA guidelines all provide that the SBA's determination of competency following a referral by the Agency is conclusive on that issue. 48 C.F.R. 9.104–3(d); 4 C.F.R. 21.5; 13 C.F.R. 125.5.

61.    In a typical bid protest, the Contracting Officer for the Agency has sole discretion in evaluating whether a bidder is responsible for a government Project and the court gives reasonable deference to that determination.

62.    Conversely, such deference is not given to the Agency when FAR, regulations governing bid protests and the SBA guidelines state the SBA should have exclusive jurisdiction to determine the competency of a small businesses concern after the Agency has issued a Determination of Non-Responsibility. 48 CFR 19.602-1(e).

63.    The Agency was statutorily required to wait 15 business days (or longer upon agreement) after the SBA's receipt of the Agency's referral before taking any action regarding the award of the contract for the Project.

64.    Moreover, the ACOE agreed to permit the SBA to issue a timely COC on September 27, 2018, when it discussed the SBA's inability to issue the COC until September 27, 2018 and accepted that timeline. This agreement also created a statutory obligation to wait before taking any action regarding the award.

65.    Here, the Agency did not wait the requisite 15 days (or until the date that it expressly agreed upon).

66.    It is undisputed that the SBA would have issued a COC on Plaintiff's behalf but for the actions of the Agency.

---

[16] The GAO has commented that government agencies "lack the internal controls required to provide reasonable assurance that only eligible small businesses participate" and the SBA plays an important role in this process. https://www.gao.gov/key_issues/economic_development_and_small_business/issue_summary.



67.    The actions of the Agency are a violation of the FARs and contrary to public policy considerations and constitutes prejudicial error.

68.    Plaintiff was prejudiced by the Agency's actions as they did not just have a "substantial chance" of award of contract, Plaintiff **would have been** awarded the contract if the Agency had not been deceptive in its communications with the SBA or if it had communicated to the SBA, just once, the Agency's hard deadline to notify the Army of its decision by September 27, 2018 at 12 p.m.

## VII.    COUNT II – DECLARATORY JUDGMENT THAT PLAINTIFF IS AWARDED THE CONTRACT FOR THE PROJECT

69.    Plaintiff incorporates by reference paragraphs 1-68 of the Complaint as if fully set forth herein.

70.    This Court has authority to set aside the award of the contract to Ames, and award the contract to ACOE, as the lowest responsible bidder. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed.Cir.2009) (internal quotation marks omitted); *Banknote Corp. of Am. v. United States* (Banknote), 365 F.3d 1345, 1351 (Fed.Cir.2004).

71.    It is undisputed that Plaintiff was lowest bidder on the project and that the SBA believes Plaintiff to be a competent bidder.

72.    But for the actions of the ACOE, Plaintiff would have been awarded the contract for the Project pursuant to the FARs, regulations governing bid protests and SBA guidelines. This is not just speculation or argument on the part of Plaintiff, because the ACOE had prepared an award to Plaintiff which conclusively establishes Plaintiff's entitlement.[17]  If the COC had been issued by SBA, ACOE would have been obligated to award the contract to Plaintiff.

---

[17] *See* Proposed Award to ASE at **Exhibit G**.



73.     Plaintiff requests that this court set aside the prior award of the contract and enter a declaratory order that the contract must be award to Plaintiff.

## VIII.     COUNT III – REQUEST FOR PERMANENT INJUNCTIVE RELIEF TO ENJOIN PERFORMANCE BY ANY CONTRACTOR OTHER THAN PLAINTIFF ON THE PROJECT

74.     Plaintiff incorporates by reference paragraphs 1-73 of the Complaint as if fully set forth herein.

75.     As demonstrated above, the ACOE's decision to remove the SBA's statutory authority to determine Plaintiff's competency was arbitrary and capricious, and constituted prejudicial error. There is no lawful justification for the ACOE to continue with the performance of the contract with any contractor other than Plaintiff.

76.     The requested relief is that the ACOE be enjoined from allowing any contractor other than Plaintiff from performance of the contract.

77.     Absent the requested injunctive relief, Plaintiff will suffer irreparable harm. This is a large civil project and Plaintiff spent considerable time, effort and money preparing the prevailing bid for this procurement. If Plaintiff is denied the opportunity to perform on the contract that it should have been awarded, it will be denied millions of dollars of business.

78.     Granting the requested relief is in the public's interest. The public has an overriding interest in preserving the integrity of the bid process on federal procurements and requiring the federal government to follow its own regulations. Moreover, the public also has a strong interest in promoting the fair and transparent competition for small businesses and the promotion of small businesses bidding on government projects, which they otherwise may be precluded from participating in.



79.     ACOE will suffer no hardship – indeed it would benefit – by promoting competition and a fair and transparent process for small business interests in accordance with the legislative intent of the Small Business Act. Moreover, no performance on the contract has yet occurred, and by its own admission, the ACOE was prepared to award the contract to Plaintiff as of September 25, 2018, if not for the ACOE's own actions. Clearly, nothing has changed in that regard and the ACOE will not be harmed in any way if the contract is awarded to Plaintiff. Conversely, Plaintiff will suffer great hardship by being denied the ability to compete for and earn a profit from the admittedly large Yellowstone Project. Accordingly, the balance of hardships weighs in favor of granting the requested relief.

80.     Equity and the very notion that small businesses can be given a fair shake in the government procurement process rests on this decision.

81.     Accordingly, this Court should enjoin the performance of the contract by any contractor other than Plaintiff.

## IX.    <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment for Plaintiff in this Complaint and further requests:

a)  That the Court vacate the ACOE's prior Determination of Non-Responsibility and issue declaratory judgment that Plaintiff was a competent bidder for the Project consistent with the SBA's determination of competency;

b)  Award the contract to Plaintiff as the lowest competent bidder;



COMPLAINT – 16
175720.4 | 102264.1

c)  That the Court grant permanent injunctive relief prohibiting the performance of the contract by any contractor other than Plaintiff prior to the resolution of this action;

d)  That the Court award attorneys' fees and protest costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). *Crux Computer Corp. v. United States*, 24 Cl. Ct. 223 (1991); *Bailey v. United States*, 1 Cl. Ct. 69 (1983); and

e)  Such other relief that the Court deems just and proper.

DATED:  This 27th day of December 2018.

AHLERS CRESSMAN & SLEIGHT PLLC

By:_____
    Scott R. Sleight
    scott.sleight@acslawyers.com
    999 Third Avenue, Suite 3800
    Seattle, WA  98104-4023
    Phone:  (206) 287-9900
    Fax:  (206) 287-9902
    Attorney for Plaintiff,
    James F. Thomson d/b/a Southwest American
    Electric, Inc.

COMPLAINT – 17
175720.4 | 102264.1